IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-02266-PAB-NYW

JAIME LONGORIA,
ABIGAIL RATCHFORD
ANA CHERI,
EMILY SEARS, and
LUCY PINDER,

    Plaintiffs,

v.

MILLION DOLLAR CORPORATION d/b/a Dandy Dan's a/k/a Dandy Dan's Gentlemen's Club,

    Defendant.

_____

# ORDER
_____

This matter is before the Court on Defendant's Motion for Summary Judgment [Docket No. 70]. The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## I. BACKGROUND[1]

Defendant operates a strip club in Denver, Colorado. Docket No. 70 at 3, ¶ 1. Plaintiffs are various professional models "who earn a living by commercializing their images." *See* Docket No. 82 at 8, ¶ 46. From August 10, 2015 to May 18, 2016, images of plaintiffs were posted on defendant's social media platforms. Docket No. 70 at 3, ¶¶ 5-6. Plaintiffs never provided defendant with permission to use any of their images. Docket No. 82 at 8, ¶ 47. Although the photos were posted on defendant's social medial platforms, defendant had hired a third party, the Social Movement, to be

---

[1] The following facts are undisputed unless otherwise indicated.

in charge of defendant's social media marketing. Docket No. 70 at 3, ¶¶ 3-4. The Social Movement "monitored and provided content on [d]efendant's Twitter, Instagram[,] and Facebook platforms," including the posting of plaintiffs' images. *Id.*, ¶ 4. All of plaintiffs' images were removed from defendant's various social media platforms by September 18, 2018. *Id.* at 4, ¶ 13.

The Social Movement generally had creative control over defendant's marketing.[2] *See id.*, ¶ 8. Defendant never requested that the Social Movement post plaintiffs' images.[3] *Id.*, ¶ 7. None of the plaintiffs are from the Denver area or have done work in Denver, and none have been informed that anyone saw their images on defendant's social media platforms or that they believed that plaintiffs sponsored or endorsed defendant's business. *See id.* at 6-9, ¶¶ 25-40. Defendant was unaware that any of the images on its social media platforms "had been improperly acquired" until plaintiffs informed defendant as much. *Id.* at 5, ¶ 19.

---

[2] Plaintiffs deny this fact and claim that text messages attached to the affidavit of Marvin Headley, the business manager of defendant's strip club, contradict this statement. *See* Docket No. 82 at 2, ¶ 8. However, plaintiffs are required to "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). Plaintiffs do not point to a single piece of evidence demonstrating that the Social Movement did not generally have creative control over defendant's marketing. As a result, the Court deems this fact admitted. *See* Fed. R. Civ. Proc. 56(e)(2) (permitting a court to consider a fact that a party "fails to properly address" as "undisputed for the purposes of the motion").

[3] Plaintiffs also deny this fact, again arguing that the text messages attached to the affidavit of Mr. Headley contradict this statement. Docket No. 82 at 2, ¶ 7. However, plaintiffs have not "designate[d] specific facts showing that there is a genuine issue for trial," *Celotex*, 477 U.S. at 324, on this issue, as plaintiffs have failed to point out a single text message, or any other piece of evidence, where defendant asked the Social Movement to post any of the plaintiffs' images. *See* Docket No. 70-3 at 5-14. Therefore, the Court deems this fact admitted.

On August 31, 2018, plaintiffs filed suit. *See* Docket No. 1. In their amended complaint, plaintiffs bring two causes of action, one for false advertising and the other for false endorsement, both under the Lanham Act, 15 U.S.C. § 1125(a). *See* Docket No. 5 at 16. On May 15, 2020, defendant filed a motion for summary judgment, arguing that plaintiffs cannot make out a claim under § 1125(a) and, even if they could, they can not demonstrate damages. *See generally* Docket No. 70. Before defendant filed its motion for summary judgment, defendant filed two motions to exclude: one to exclude plaintiffs' damages expert, Stephen Chamberlin, Docket No. 56, and the other to exclude plaintiffs' consumer confusion expert, Martin Buncher. Docket No. 57. On March 2, 2021, the Court excluded both experts. *See* Docket No. 105; *see also* Docket No. 109 (denying plaintiffs' motion to reconsider the Court's ruling excluding Mr. Buncher).

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a

verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

### III. ANALYSIS

Plaintiff brings two claims under the Lanham Act, one for false advertising and one for false endorsement. *See* Docket No. 5 at 16. As relevant here, § 1125(a) of the Lanham Act states:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin,

4

>false or misleading description of fact, or false or misleading representation of fact, which--
>
>>(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
>>(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
>shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

*See* 15 U.S.C. § 1125(a)(1). Thus, the Act "creates two distinct bases of liability; false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014).

To succeed on a false advertising claim, a plaintiff must show: "(1) that defendant made material false or misleading representations of fact in connection with the commercial advertising or promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake as to [] the origin, association or approval of the product with or by another . . . ; and (4) injure the plaintiff." *Digital Ally, Inc. v. Util. Assocs., Inc.*, 882 F.3d 974, 978 (10th Cir. 2018). False association claims are similar, except that in a false association claim, a plaintiff "alleges the misuse of a trademark, i.e., a symbol or device such as a visual likeness, vocal imitation, or other uniquely distinguishing characteristic, which is likely to confuse consumers as to the plaintiff's sponsorship or approval of the product." *See Amazon Inc. v. Cannondale Inc.*, No. 99-cv-00571-EWN-PAC, 2000 WL 1800639, at *7 (D. Colo. July 24, 2000). To survive

summary judgment on a false association claim, a "plaintiff must show that a genuine issue of material fact exists regarding whether defendant['s] use of [plaintiffs' photos] would likely cause confusion about the sponsorship" or endorsement of defendant. *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089 (10th Cir. 1999).

Thus, although false advertising alleges that a defendant's misuse of a mark caused an "injury to a commercial interest in reputation or sales," *Lexmark*, 572 U.S. at 132, and false association alleges an injury resulting from a misleading association with the defendant's business, *see King of the Mountain*, 185 F.3d at 1089, both have likelihood of consumer confusion as a critical element. *See id.* ("Likelihood of confusion forms the gravamen for a trademark infringement action." (citation omitted)). There are six factors a court should analyze in determining the likelihood of confusion:

> (a) the degree of similarity between the marks; (b) the intent of the alleged infringer in adopting its mark; (c) evidence of actual confusion; (d) the relation in use and the manner of marketing between the goods or services marketed by the competing parties; (e) the degree of care likely to be exercised by purchasers; and (f) the strength or weakness of the marks.

*Id.* at 1089-90. A court is tasked with weighing these factors, which are "interrelated, and no one factor is dispositive." *Id.* at 1090. Defendant argues that there is insufficient evidence in the record to demonstrate a likelihood of confusion and, as a result, it is entitled to summary judgment. *See* Docket No. 70 at 13-16. If plaintiffs cannot show likelihood of consumer confusion, both claims fail. *See id.* at 12 (stating that the common element for both claims is likelihood of consumer confusion); Docket No. 82 at 10 (same). The Court addresses each factor in turn.

First, regarding the similarity of the marks, it is undisputed that defendant used actual images of plaintiffs. *See* Docket No. 70 at 13 ("Defendant does not dispute that [p]laintiffs' actual images were reposted to [d]efendant's social media platforms."). However, defendant argues that, because the images were accompanied by "proper attribution to the original source of the posts," and so any viewer could see "the correct source of the original posts . . . [the] likelihood of confusion . . . is low." *Id.* The Court fails to see the relevance of attribution to the original source. The issue is whether the marks are similar, and defendant does not explain how attribution for the original photo in anyway renders the marks more or less similar. Courts to consider this exact issue – including cases involving many of the same plaintiffs – have found that, given the copying of the photos, this factor weighs in favor of a likelihood of confusion. *See Pinder v. 4716 Inc.*, – F. Supp. 3d –, 2020 WL 6084052, at *13 (D. Ariz. Oct. 15, 2020); *Toth v. 59 Murray Enters., Inc.*, 2019 WL 95564, at *10 (S.D.N.Y. Jan. 3, 2019), *aff'd in relevant part*, *Electra v. 59 Murray Enters., Inc.*, 987 F.3d 233 (2d. Cir. 2021); *Gibson v. BTS N., Inc.*, 2018 WL 888872, at *5 (S.D. Fla. Feb. 14, 2018). The Court agrees that, since the photos are exact copies, the marks are similar. Accordingly, the Court finds that this factor weighs in favor of plaintiffs.

Second, the Court analyzes the intent of defendant. "The proper focus under this factor is whether defendant had the intent to derive benefit from the reputation or goodwill of plaintiff." *King of the Mountain*, 185 F.3d at 1091 (citation omitted). The undisputed evidence shows that defendant provided the Social Movement with creative control over defendant's social media marketing, besides a few instances unrelated to

7

plaintiffs or their photographs. *See* Docket No. 70 at 3-4, ¶¶ 7-8. Since it is "undisputed that defendant[] never specifically requested the use of any of the plaintiffs' images in their promotional material, it is clear that defendant[] did not intend to capitalize on plaintiffs' good will." *See Toth*, 2019 WL 95564, at *9, *aff'd in relevant part*, *Electra*, 987 F.3d 233; *see also King of the Mountain*, 185 F.3d at 1091 ("Plaintiff has presented no evidence to suggest that the defendants [were] even aware of plaintiffs' existence, let alone that they intentionally attempted to trade on plaintiff's reputation or good will."). However, even if it was the Social Movement that intended to capitalize on plaintiffs' good will, defendant still was aware that plaintiffs were not dancers at its club. This at least raises an inference that defendant intended to capitalize on plaintiffs' good will. *See Pinder*, 2020 WL 6084052, at *16 ("Defendant knew that any images used in advertising were not of its own dancers, but never investigated whether the proper permissions were obtained."). Accordingly, this factor weighs slightly in favor of plaintiffs.

Third, plaintiffs have failed to provide any evidence of actual confusion. The only evidence that plaintiffs point to is the report of Mr. Buncher. *See id.* at 15. However, the Court has excluded Mr. Buncher's opinions regarding the level of confusion as well as his consumer survey report. *See* Docket No. 105; Docket No. 109. Moreover, each plaintiff has stated that she is not aware of anyone who has associated her with defendant's strip club. *See* Docket No. 70 at 6-9, ¶¶ 25-40. As a result, there is no

evidence of any actual consumer confusion.  This factor therefore weighs in favor of defendant.[4]

The fourth factor looks to the "similarity between the products and services." *King of the Mountain*, 185 F.3d at 1092.  In sponsorship or endorsement cases, "parties may have little similarity in their products or manner of marketing." *Id.*  Defendant argues that, based on the content of the images, "it can be argued that [p]laintiffs were attempting to market or sell their images in adult wares or other scantly-clad attire, and that [d]efendant's club is also in the business of marketing women's bodies and appearances."  Docket No. 70 at 15.  Plaintiffs do not address this factor in any substantive fashion.  Rather, they argue that, because of Mr. Buncher's survey, there is a likelihood of confusion.  *See* Docket No. 82 at 17.  But that is not the issue.  The question is whether plaintiffs' product and defendant's product are similar.  The more similar the product, the more likely the level of confusion.  *See King of the Mountain*, 185 F.3d at 1092 ("The greater the similarity between the products and services, the greater the likelihood of confusion." (citation and alterations omitted)).

The undisputed evidence in is that defendant operates a strip club and that plaintiffs are models.  While the Court agrees with defendant's assessment that the selling of their images represents some similarity between the products or services, that is where the similarities end.  "[T]he parties do not sell their goods to the same purchasers.  Plaintiffs derive income from being hired for photo shoots; [d]efendant

---

[4] Plaintiffs make an argument regarding their "celebrity" status.  *See* Docket No. 82 at 15.  However, this is more appropriately addressed in regards to the strength of plaintiffs' mark.

derives income from customers' entrance fees, entertainment, and drinks at the strip club." *See Pinder*, 2020 WL 6084052, at *15. Moreover, plaintiffs have gone to great lengths to argue that they would never associate themselves with defendant or anyone in defendant's business. *See, e.g.*, Docket No. 82-2 at 4-5, ¶ 11 ("I can say without reservation that I would never have permitted or consented to Defendant['s] use or alteration of my image or to associate me in any way with [] Dandy Dan's, the stripper lifestyle generally or the full friction and fully nudity lifestyle activities that take place at Dandy Dan's."). Thus, even plaintiffs believe that their and defendant's businesses are so different that they would never consent to be associated with defendant. *Id.* Given that plaintiffs derive income from photo shoots, would never be associated with defendant, and defendant's business model is entirely different, the Court finds that this factor weighs in favor of defendant. *See Gibson*, 2018 WL 888872, at *7 (concluding that the similarity of the products between a defendant strip club and plaintiff models were not similar).

Fifth, as to the degree of care likely to be exercised by defendant's consumers, the Court finds that there is no evidence regarding the level of care that defendant's customers exhibit. Defendant argues that its customers are "regulars" and that defendant is a "small[,] local establishment," apparently with the implication that defendant's customers would know that none of plaintiffs would be associated with defendant. *See* Docket No. 70 at 15. Plaintiffs, again, fail to properly respond to this argument, instead claiming that, since the purpose of the advertisements is to encourage people to attend defendant's strip club, this factor somehow weighs in their

10

favor. *See* Docket No. 82 at 18. The Court fails to see how the intent of the advertisements is relevant to the care exercised by consumers. More importantly, defendant does not have the burden of persuasion at trial and, as a result, after pointing to the absence of any evidence regarding degree of care, plaintiffs must offer evidence to create a genuine issue of material fact regarding the care of defendant's customers. *See Bausman*, 252 F.3d at 1115; *Concrete Works*, 36 F.3d at 1518. Plaintiff has not done so. While one can assume that a strip club attendee might not exercise care in the viewing of models, there is no legal authority presented or evidence to suggest so. Moreover, the Tenth Circuit has cautioned that, in sponsorship cases, "[t]he care with which consumers select a product does not impact the association they may make regarding the sponsorship of an event." *King of the Mountain*, 185 F.3d at 1092. This factor thus has "little impact" on the likelihood of confusion. *Id.* Therefore, the Court finds that this factor is neutral.

The final factor is the strength or weakness of the marks. "The stronger a []mark, the more likely that encroachment upon it will lead to sponsorship confusion." *Id.* at 1093. In a case like this one, this element focuses on "the level of recognition the celebrity enjoys." *See Amazon*, 2000 WL 1800639, at *8 (citation omitted); *see also Pinder*, 2020 WL 6084052, at *16 (analyzing whether the plaintiffs "are recognizable to members of the community for which Defendant's advertising is focused" and stating that a "strong mark is demonstrated by how recognizable the celebrity is amongst relevant consumers"); *Toth*, 2019 WL 95564, at *6 ("For purposes of a false endorsement claim, the mark is the plaintiff's persona and the strength of the mark

refers to the level of recognition that the plaintiff has among the consumers to whom the advertisements are directed."). Defendant argues that there is no evidence that anyone mistakenly believed plaintiffs sponsored or endorsed defendant and, therefore, plaintiffs do not have a strong mark. *See* Docket No. 70 at 16. Plaintiffs respond that they do not need to be celebrities for a false association or endorsement claim and, even if they did, they have millions of followers on social media and, therefore, have strong marks.

The Court finds that this factor weighs slightly in plaintiffs' favor. Defendant's argument regarding confusion misses the mark – the issue is whether plaintiffs have recognition, not whether there was any evidence of actual confusion. Additionally, plaintiffs are correct that they need not be "celebrities" in the conventional sense of the word to make out a Lanham Act claim. However, they still must demonstrate that they have a strong mark, that is, a recognizable one, and because of the strength and notoriety of that mark, consumers are likely to be confused. The undisputed evidence in the record is that plaintiffs have a "substantial following on social media." *See* Docket No. 82 at 8, ¶ 48. Plaintiffs do not provide any evidence regarding what level of social media recognition turns into a strong mark, or what "substantial" means. However, defendant admits that the various plaintiffs have a "substantial" following, whatever that may mean. Given this concession, but combined with the lack of evidence regarding what substantial means and whether a "substantial" social media following turns into recognition, the Court finds that this factor weighs slightly in favor of plaintiffs. *See Toth*, 2019 WL 96654, at *7 ("[W]hile . . . plaintiffs have participated in promotional campaigns for a wide variety of brands and appeared in magazines, TV shows, and movies, their resumes are devoid of evidence that they actually garnered

recognition for any of their appearances."); *Gibson*, 2018 WL 888872, at \*7 ("Plaintiffs have not . . . submitted any information as to whether their likeness are recognized by the public.").

In sum, three factors weigh in favor of plaintiffs: the similarity of the mark, the intent of defendant, and the strength of the mark. However, only the similarity of the mark weighs strongly in plaintiffs' favor, the other two only weigh slightly toward finding a likelihood of confusion. For defendant, the remaining factors weigh strongly in their favor. First, there is no evidence of actual confusion, which is the "best evidence of likelihood of confusion." *See Water Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136, 1144 (10th Cir. 2013). Second, defendant and plaintiffs operate in different industries. These two factors, which weigh strongly in defendant's favor, outweigh the limited weight of the factors in favor of plaintiff. As a result, the Court finds that there is no likelihood of consumer confusion. Because there are no genuine issues of material fact as to the likelihood of consumer confusion, and likelihood of consumer confusion is central to both claims, defendant is entitled to summary judgment.[5]

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 70] is **GRANTED**. It is further

---

[5] Even were plaintiffs able to make out a claim under § 1125 for either false advertising or false association, they still would not be entitled to damages, as they have failed to produce any evidence of actual damages given that their expert, Mr. Chamberlin, was excluded. *See* Docket No. 105.

**ORDERED** that judgment shall enter for defendant and against plaintiffs on all claims. It is further

**ORDERED** that, within 14 days of the entry of judgment, defendant may have its costs by filing a bill of costs with the Clerk of the Court. It is further

**ORDERED** that this case is closed.

DATED March 31, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge